

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOYCE MARTINEZ, ET AL. | * | CIVIL ACTION |
| v. | * | NO. 00-0017 |
| UNITED STATES OF AMERICA | * | SECTION "F" (1) |

\*   \*   \*   \*   \*

## MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT

NOW INTO COURT, through the undersigned Assistant United States Attorney, comes the defendant, United States of America, and moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), or for summary judgment pursuant to Fed. R. Civ. P. 56(c), for reasons set forth in the attached memorandum in support.

Respectfully submitted,

JIM LETTEN
UNITED STATES ATTORNEY

_____
FRED T. HINRICHS (#17300)
Assistant United States Attorney
Hale Boggs Federal Building
501 Magazine Street, 2nd Flr.
New Orleans, LA 70130
Tel: (504) 680-3129

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon counsel for all parties

by mailing the same to each, properly addressed and postage prepaid this 1st day of August,

2001.

FRED T. HINRICHS
Assistant United States Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOYCE MARTINEZ, ET AL.** | * | **CIVIL ACTION** |
| **v.** | * | **NO. 00-0017** |
| **UNITED STATES OF AMERICA** | * | **SECTION "F" (1)** |

\*　　\*　　\*　　\*　　\*

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

### Introduction

Joyce Martinez and her husband, Louis Martinez, filed this civil action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., following Mrs. Martinez's fall in the U.S. Navy Exchange ("NEX"), located at the Naval Support Activity in Algiers, Louisiana.[1] Her fall occurred on Saturday, December 21, 1996. Mr. Martinez's consortium claim was previously dismissed for his having failed to pursue his administrative remedy. (Rec. Doc. 8). This matter is set for trial on September 24, 2001.

The United States moves for dismissal of the remaining action under Fed. R. Civ. P.

---

[1] The Naval Support Activity is the Headquarters of the Naval and Marine Forces Reserve.

12(b)(1) and 12(b)(6), because this action is clearly in the nature of a premises liability action, rather than based on the negligence of any federal employee. Also, the action fails under Rule 56(c), because her allegations are not supported by the evidence, and essential elements of a negligence claim, i.e., unreasonable risk of harm and prior knowledge cannot be established.

### Uncontested Material Facts

Joyce Martinez is the wife of a U.S. Air Force veteran. For years prior to December 21, 1996, she enjoyed the privilege of shopping at the NEX. Approximately fifteen years ago, the NEX underwent a renovation to increase its size by opening a common wall between adjacent buildings and creating a passage.[2] A two inch differential in floor elevations necessitated construction of a concrete threshold or slope between buildings. The newer "Toyland" area is slightly higher in elevation.[3]

At the time of the renovation, the slope was painted bright yellow with a warning, "CAUTION", centered in red letters.[4] The surrounding floor was painted gray and contrasts sharply with the painted slope. See attached photographs depicting the longstanding appearance of the slope as it existed at the time of Mrs. Martinez's fall on December 21, 1996.[5]

---

[2] Gov't Ex. "A", Marshall Declaration (hereafter "Marshall"), para. 5, with attached layout of the facility.

[3] Gov't Ex. "A", Marshall, para. 4; Gov't Ex. "B", Chaisson Declaration (hereafter "Chaisson"), para. 2; Gov't Ex. "C", Spurlock Declaration (hereafter "Spurlock"), para. 3; Gov't Ex. "D", Camel Declaration (hereafter "Camel"), para. 5.

[4] Gov't Ex. "A", Marshall, para. 7, and Gov't Ex. "B", Chaisson, para. 4, attesting to painting of the slope at the time of renovation.

[5] Gov't Ex. "A", Marshall, paras. 6-7; Gov't Ex. "B", Chaisson, paras. 3-4; Gov't Ex."C", Spurlock, para. 2; Gov't Ex. "D", Camel, para. 4; Gov't Exhibit "E", Schulz Declaration (hereafter "Schulz"), paras. 6-7, 14.

<u>The Slope As It Existed At the Time of Her Fall</u>



Mrs. Martinez has described herself as a "frequent" shopper at the NEX for years prior to December 21, 1996, although she has denied shopping frequently in Toyland.[6] Several NEX employees knew her by sight.[7] As such, she was familiar with the slope.[8] She testified:

> Q:    Okay. As you had been to the Toy Center prior to this date, were you aware that there was a difference in the levels of the floors?

---

[6] Gov't Ex. "F", Willis Declaration, (hereafter "Willis"), paras. 2-3, with Martinez's statement, p. 6; Gov' t Ex. "G", Martinez deposition (hereafter "Martinez"), pp. 6-7.

[7] Gov't Ex. "A", Marshall, para. 8; Gov't Ex. "C", Spurlock, para. 8; Gov't Ex. "D", Camel, para. 10; Gov't Ex. "E", Shulz, para. 10.

[8] Gov't Ex. "G", Martinez, p. 16.

A:      Yes.  Yes.

Q:      So you were aware that prior to going to the Toy Center
        on the 21st of December, 1996 -

A:      Let me say this much.  I was there, but I had been shopping.
        I had been back there sometime ago.  So I did not have my
        mind on the slope in that floor.

In addition to being familiar with the slope, on December 21, 1996, she first traversed the

slope (without incident) in order to shop in Toyland, and noticed the slope at that time.[9]  She

testified:

Q:      Right.  But did you have to walk over this change in - this
        slight decline as you refer to it -

A:      Yes.

Q:      - to get to the rear of the store?

A:      Yes.

Q:      Did you notice it at the time that you walked from the front
        of the store to the rear of the store?

A:      Well, I'll say yes.

It is undisputed that her fall occurred upon her return to the furniture and appliance area.[10]

She has consistently maintained that no foreign substance or debris caused her to fall.[11]

---

[9]  Gov't Ex. "G", Martinez, p. 9.

[10]  Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, p. 3; Gov't Ex. "D",
Camel, para. 3; Gov't Ex. "E", Shulz, para. 9.

[11]  Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, p. 4; Rec. Doc. 1,
Complaint, paras. IV-V, VII; Gov't Ex. "G", Martinez, pp. 12-13.

NEX employees have attested that the floor was clean, dry, and free of any substance or debris.[12] Lighting in the area was good.[13] It is undisputed that no NEX employee was aware of any problem with the slope. Over the past fifteen years there has never been another a slip or fall on the slope, and no customer including Ms. Martinez, has ever complained about the condition of the slope or the manner in which it has been maintained.[14]

Mrs. Martinez admitted to not looking where she was walking when she fell. She was "looking forward" at her sister and did not have her mind on the slope.[15] She stated that she was talking with her sister when she fell.[16] Her sister, Jacqueline Washington, explained that she didn't realize that she had to step down.[17] In addition, Mrs. Martinez was wearing boots with a 1½ inch heel and . . . "just slipped."[18]

One month post-accident, on January 22, 1997, Mrs. Martinez provided a recorded statement wherein she stated that she could not remember whether the floor was painted and

---

[12] Gov't Ex. "A", Marshall, para. 9; Gov't Ex. "D", Camel, para. 6; Gov't Ex. "E", Shulz, para. 12.

[13] Gov't Ex. "F ", Willis, paras. 2-3, with Martinez's statement, p. 6, and Washington's statement, p. 3; Gov't Ex. "C", Spurlock, para. 7; Gov't Ex. "D", Camel, para. 9; Gov't Ex.."E", Shulz, para. 8.

[14] Gov't Ex. "A", Marshall, paras. 9-11; Gov't Ex. "B", Spurlock, paras. 4-6; Gov't Ex. "C", Chaisson, para. 5; Gov't Ex. "D", Camel, paras. 6-8; Gov't Ex. "E", Shulz, paras. 11-13.

[15] Gov't Ex. "G", Martinez, pp. 7-8, 12, 16.

[16] Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, p. 5.

[17] Gov't Ex. "F", Willis, paras. 2-3, with Washington's statement, p. 3.

[18] Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, p. 5.

5

could not recall the color.[19]  Specifically, she stated at page 3:

>    Q:    Is the concrete painted?
>
>    A:    Right now I really can't say.  I really don't know.

And at page 4:

>    Q:    Do you remember what color it was?
>
>    A:    I cannot even remember the color.  I just could not think really
>          cause my body was hurting me so bad and really I'm still not
>          together since that fall.

In furtherance of her law suit, she has decided to claim that the floor was not painted at

the time.[20]  There is not a scintilla of evidence that supports this, and it is not a "material" issue of

fact because she has admitted being familiar with the slope prior to her fall.

The Basis of the Complaint is Premises Liability

Mrs. Martinez has consistently maintained that her complaint is with the floor itself.  She

testified that the slope or change in elevation caused her to fall.[21]  She said:

>    Q:    At the moment did you know what caused you to fall?
>
>    A:    I slipped.
>
>    Q:    Okay.  And you slipped on what?
>
>    A:    The floor, the slant.  I just went down on the slant, you know, on
>          the slant in the floor, the decline in the floor.  I slipped there.
>
>    Q:    Do you believe that it's because of the change in the elevation

---

[19]  Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, pp. 3-4.

[20]  Rec. Doc. 1, Complaint, at para. V b; Gov't Ex. "G", Martinez, pp. 13-15.

[21]  Gov't Ex. "G", Martinez, pp. 12-13.

6

from one floor to the other -

A:    Yes, I do.

Q:    - that caused you to fall?

A:    Yes, I do.

In response to a specific interrogatory,[22] she stated that her complaint was with the slope

itself (and not any specific federal employee for any act or omission):

"**Basis of this Claim**

## INTERROGATORY NO. IX

Describe in detail each and every act and/or omission on the part of the
United States and/or its employees, agents, and/or servants which you contend
constitutes negligence as alleged in your compliant.  As to each and every such
act and/or omission state the following:

a)    The person or persons whom you contend were negligent;

b)    Exactly what acts or failures to act you contend constitute negligence;

c)    What you contend should have been done."

\* \* \*

"ANSWER TO INTERROGATORY NO. IX:

Plaintiff submits that on the date and time of her accident, there was a
change in elevation  in the area of her fall that did not have any color changes or
warning signs and was of the same color at both sides of the change of elevation
and also merchandise in the area specifically displayed in the manner to attract the
attention of shoppers.  Plaintiff submits that the area was subsequently changed to
include color changes and warning signs which should have been in place at the
time of her accident.  This is the basis of the liability of the defendant owner and
operator of those premises to plaintiff.  Plaintiff reserves the right to amend and
supplemental this response as discovery progresses."

_____

[22] Gov't Ex. "H", United States' Interrogatory No. IX, and her answer.

7

Further, in her January 22, 1997 statement provided to the Navy's investigator, she stated that floor should have been "flat". . . "rather than crooked", and this was the cause of her fall.[23]

Following the denial of her administrative claim on July 8, 1999,[24] her Complaint was filed on January 4, 2000, alleging "negligence" for failing to adequately mark and place warnings in the area of an uneven level of the floor, in failing to paint or otherwise put signage on the floor, in building, maintaining, or otherwise erecting the Naval Exchange in a manner that resulted in a floor in the shopping area that had two different levels, in creating a trap for the unwary, in failure to adequately supervise, and other (unspecified) acts of negligence and fault.[25]

Despite her use of the word "negligence" in the Complaint, it is clear that the basis for this action is an alleged premises defect, which is not cognizable under the FTCA. See 28 U.S.C. §§ 1346(b), 2679(b)(1). F.D.I.C. v. Meyer, 510 U.S. 471, 477 (1994). Sovereign immunity of the United States is therefore preserved. Also, summary judgment is appropriate because her allegations are not supported by the evidence and several essential elements of a negligence claim cannot be established. Celotex, supra, 477 U.S. 317, at 323-24.

## LAW AND ARGUMENT

### I.    Subject Matter Jurisdiction is Lacking

Parties invoking the jurisdiction of the federal courts have the burden to establish jurisdiction by affirmatively alleging the facts conferring jurisdiction in their complaints, and

---

[23]  Gov't Ex. "F", Willis, with Martinez's statement, p. 6.

[24]  Gov't Ex. "I" July 8, 1999 letter of M. J. Suszan, denying her administrative claim.

[25]  Rec. Doc. 1, Complaint, paras. V and VII.

8

mere conclusory statements do not suffice. Gaar v. Quirk, 86 F.3d 451, 453 (5th Cir. 1996)

(citing Lowe v. Ingalls Shipbuilding, 723 F.2d 1173, 1176-77 (5th Cir. 1984)).

It is well established that the United States is immune from suit, except to the extent that

it has waived its sovereign immunity. FDIC v. Meyer, 510 U.S. 471, 477 (1994); United States

v. Mitchell, 463 U.S. 206 (1983). The FTCA waives sovereign immunity under limited

circumstances, however, the "[w]aiver of immunity under the FTCA, as with all statutes, is to be

strictly construed." Perkins v. United States, 1999 WL 148442, *2 (E.D. La. March 17,

1999)(Sear, J.)(citing Owen v. United States, 935 F.2d 734 (5th Cir. 1991), writ denied 502 U.S.

1031 (1992); Levrie v. Department of Army, 810 F.2d 1311, 1314 (5th Cir. 1987)(citing

McMahon v. United States, 342 U.S. 25, 27 (1951).

The Supreme Court explained in F.D.I.C. v. Meyer, supra, at p. 477:

> "Section 1346(b) grants federal district courts jurisdiction over a
> certain category of claims for which the United States has waived
> its sovereign immunity and 'render[ed]' itself liable. Richards v.
> United States, 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d (1962).
> This category includes claims that are:
>
> > "[1] against the United States, [2] for money damages . . . [3] for
> > injury or loss of property, or personal injury or death [4] caused
> > by the negligent or wrongful act or omission of any employee of
> > the Government [5] while acting within the scope of his office or
> > employment, [6] under circumstances where the United States, if
> > a private person, would be liable to the claimant in accordance
> > with the law of the place where the act or omission occurred. 28
> > U.S.C. § 1346(b).
>
> A claim comes within this jurisdictional grant – and thus is
> "cognizable" under § 1346(b)-- if it is actionable under § 1346(b).
> And a claim is actionable under § 1346(b) if it alleges the six
> elements above." (emphasis supplied).

Strictly construed, the statutory language does not "encompass suits seeking to hold the

9

United States liable on strict liability or absolute liability theories." Aretz v. United States, 604 F.2d 417, 426-427 (5th Cir. 1979)(citing Laird v. Nelms, 406 U.S. 797 (1972)). Moreover, "the FTCA does not permit suits for general premises liability to the extent that such theories resemble strict liability as opposed to 'a more focused approach that requires the courts to [consider] . . . the actor whose negligence might be imputed to the government under state law.' " Perkins, supra, (citing Berkman v. United States, 957 F.2d 108, 112-113 (4th Cir. 1992) and Cupit v. United States, 964 F. Supp. 1104, 1111-12 (W.D. La. 1997)(F.A. Little, J)(finding that a claim based on Louisiana general premises liability is not permitted under the FTCA); Saladino, III v. United States, 1993 WL 541497, *2 (E.D. La. Dec. 20, 1993)(Livaudais, J.)(no specific employee of the United States was shown to have created or been aware of the alleged condition); See also, Pizza v. United States of America, Civ. A. No. 00-1391 (March 27, 2001)(Porteous, J)(plaintiff failed to allege that specific individuals were negligent in any particular manner); See also Norman v. United States, 111 F.3d 356, 358 (3rd Cir. 1997)("By expressly waiving immunity for the tortious conduct of its employees and only its employees, the FTCA requires a more focused approach that requires the courts to determine the relationship to the United States of the actor whose negligence might be imputed to the government under state law." quoting Berkman, supra, at 112-113).

Like Perkins, supra, the instant suit does not consider "the actor" whose act or omission might be imputed to the government. Although the Complaint complains of "negligence" in a conclusory manner, it raises no specific claim against any specific federal employee. Plaintiff has consistently testified that her complaint is with the slope itself, and not a specific person for

10

an act or omission.[26]  In <u>Advanced Materials, Inc. v. United States</u>, 955 F. Supp. 58 (E.D. La 1997), the Hon. Henry A. Mentz, Jr. stated at p. 59, that the question of whether the Federal Tort Claims Act (FTCA) provides jurisdiction, turns upon <u>the substance</u> of the claim, and in making this determination, "a court is not bound by the parties' characterizations of the complaint," citing <u>City Nat. Bank v. United States</u>, 907 F.2d 536, 546 n. 9 (5th Cir. 1990); <u>Hassan v. Louisiana Dept. of Transp. & Development</u>, 923 F. Supp. 890, 894-895 (W.D. La 1990).  In <u>Advanced Materials</u>, plaintiff sought to maintain an action by labeling it a tort suit, whereas the claims were clearly founded on a contract dispute.

In <u>Perkins</u>, <u>supra</u>, the Hon. Morey L. Sear recognized that despite conclusory allegations of negligence, the actual factual basis for the action was the presence of a several-inch protruding reinforcing bar ("rebar") from a concrete barrier.  Because no specific individuals were shown to have been negligent in any specific manner, the court held that "the substance of the complaint remains one of premises liability, which fails to state a claim under the FTCA."  1999 WL 148442, at *2.  Dismissal was granted in favor of the United States.

The instant suit is analogous to <u>Perkins</u> because although Mrs. Martinez pleads "negligence" in a conclusory manner, there are no facts which show that any specific employee committed any specific act or omission that can be imputed to the government.  Because the undisputed facts show that the action is based only in premises liability theory, there is no claim cognizable under the FTCA.  <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, at 477.  Sovereign immunity is not waived, and there is no basis for subject matter jurisdiction.

---

[26]  Gov't Ex. "G", Martinez, pp. 12-13; Gov't Ex. "H", United States' Interrogatory No. IX, and her answer; Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, p. 6.

11

**II.    Summary Judgment is Appropriate Because Several Essential Elements of Plaintiff's Action Cannot Be Established**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). When the moving party has carried its burden, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. It must set forth "specific facts showing a genuine issue for trial and may not rest upon the allegations or denials contained in its pleadings." Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." Id., at 587-88. If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue of fact exists for trial. Celotex, 477 U.S. at 324.

Also, the Fifth Circuit has suggested that a "more lenient standard for summary judgment" applies in nonjury cases. U.S. Fidelity & Guar. Co. v. Planters Bank & Trust Co., 77 F.3d 863, 865 (5th Cir. 1996). Specifically, at the summary judgment stage of a bench trial, a judge has the "limited discretion to decide that the same evidence, presented to him or her as trier

12

of fact in a plenary trial, could not possibly lead to a different result." Id. at 866; See also, Perkins, supra, at *2.

Under the FTCA, the Government is liable for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The court looks to the law of the state where the act or omission occurred. 28 U.S.C.§ 1346(b); Transco Leasing Corp. v. United States, 896 F.2d 1435, 1450 (5th Cir. 1990). The principals of Louisiana tort law govern this case.

Generally, in order to prevail on a negligence claim under La. Civil Code Art. 2315, a plaintiff must show: (1) the defendant owed a duty of care to plaintiff; (2) the requisite duty was breached; (3) the defendant's conduct was a cause-in-fact of the plaintiff's harm; (4) the risk of harm was within the scope of protection afforded by the duty breached (legal cause). Bennett v. Chevron Stations, Inc., 2000 WL 782070, *2 (E.D. La. June 16, 2000)(Vance, J.)(citing Peterson v. Gibraltar Savings & Loan, 733 So.2d 1198, 1203-04 (La. 1999).

La. R.S. 9:2800.6 governs negligence claims brought against merchants for injuries and damages arising out of an accident caused by a condition existing in or on the merchant's premises.[27] The statute was not meant to apply to actions where the slip or trip is allegedly brought about because of the negligence of a store employee. See Bennett v. Chevron Stations, Inc., supra, 2000 WL 782070, *2 (citing Crooks v. National Union Fire Ins. Co., 620 So.2d 421, 424 (La. App. 3d Cir.), writ denied, 629 So.2d 391, 392 (La. 1993)(finding general principles of negligence sufficient when the accident is the result of a specific act and not solely the result of a

---

[27] La. R.S. 9:2800.6 as amended by Acts 1996, 1st Ex.Sess., No. 8 § 1, effective May 1, 1996.

13

condition found on the premises); See also, Littleton v. Wal-Mart Stores, 747 So.2d 701, 702

(La. App. 3d Cir. 1999), writ denied, 761 So.2d 546 (La. 2000); Frelow v. St. Paul Fire & Marine

Ins. Co., 631 So.2d 632 (La. App. 3d Cir. 1994). In this instance ordinary negligence principles

apply because plaintiff's exclusive remedy under the FTCA is limited to injury arising from acts

or omissions. 28 U.S.C. §§ 1346(b), 2679(b)(1); FDIC v. Meyer, 510 U.S. 471, 477 (1994).

### A.    Duty Owed By Merchants

Merchants are required to exercise reasonable care to protect those who enter the store,

keep the premises safe from unreasonable risks of harm and warn persons of known dangers.

Turner v. Brookshire Grocery Company, 785 So.2d 161, 164 (La. App. 2d Cir. 2001)(citing,

Ward v. ITT Specialty Risk Services, Inc., 739 So.2d 251 (La. App. 2d Cir.), writ denied, 750

So.2d 987(La. 1999); Leonard v. Wal-Mart Stores, Inc., 721 So.2d 1059 (La. App. 1st Cir.

1998). Although the owner of a commercial establishment has the affirmative duty to keep the

premises in a safe condition, he is not the insurer of the safety of his patrons. Id.; Fuller v. Wal-

Mart Stores, Inc., 577 So.2d 792 (La. App. 2d Cir. 1991); Ward, supra; Tanner v. Brookshire

Grocery Co., 691 So.2d 871 (La. App. 2d Cir. 1997). A store owner is not liable every time an

accident happens. Id.; Ward, supra; Leonard, supra.

Under traditional negligence concepts, the absence of an unreasonably dangerous

condition implies the absence of a duty on the part of the defendant. Williams v. Leonard

Chabert Medical Center, 744 So.2d 206, 209 (La. App. 1st Cir. 1999)(citing Oster v. Department

of Transportation and Development, State of Louisiana, 582 So.2d 1285, 1288 (La. 1991)).

Also, knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect

against injurious consequences resulting from the risk, and no responsibility is placed on the

14

owner who acted reasonably but nevertheless failed to discover that the thing presented an

unreasonable risk of harm. Kent v. Gulf States Utilities Company, 418 So.2d 493, 497-98 (La.

1982); Waters v. McDaniel Recreation Center, Inc., 521 So.2d 788 (La. App. 2d Cir. 1988).

Further, in determining the existence of a legal duty, Louisiana courts have made clear

that "[w]here the risk is obvious, universally known, easily avoidable, and a part of the natural

order and one's quotidian surroundings," there is no duty to warn and no duty to correct a

potentially dangerous condition. Brown v. United States, 861 F. Supp. 539, 541 (W.D. La.

1994)(quoting Henshaw v. Audubon Park Comm'n, ABC, 605 So.2d 640, 642 (La. App. 4th Cir.

1992)) (also citing Shelton v. Aetna Casualty & Sur. Co., 334 So.2d 406, 410 (La. 1976)). There

is no duty to warn of a hazardous condition unless it is unreasonably dangerous, and the mere

fact that a person is injured does not elevate the condition to an unreasonably dangerous one.

Deumite v. State, 692 So.2d 1127, 1141 (La. App. 1st Cir. 1997)(citing Shipp v. City of

Alexandria, 395 So.2d 727 (La. 1981)). There is no duty to warn of a condition that is equally

obvious to the plaintiff as the landowner. Guillory v. Audubon Insurance Co., 417 So.2d 892,

896 (La. App. 3d Cir. 1982)(citing Shelton, supra).

It is also well settled that not every defect presents an unreasonable risk of harm. In

determining what is an unreasonable risk of harm, courts consider moral, social, and economic

values, and the interests of justice. Bennett v. Chevron Stations, Inc., supra, 2000 WL 782070, at

*2; Kendall v. Weingarten Realty Management Co., 769 So.2d 171, 174 (La. App. 2d Cir.

2000)(citing Celestine v. Union Oil Co. of California, 652 So.2d 1299 at 1303-04 (La. 1995),

quoting Entrevia v. Hood, 427 So.2d 1146 (La. 1983)). The risk-utility balancing test weighs

factors such as gravity and risk of harm, individual and societal rights and obligations, and social

15

utility involved. <u>Boyle v. Board of Supervisors, LSU</u>, 685 So.2d 1080 (La. 1997). The

determination that a defect presents an unreasonable risk of harm predominately encompasses an

abundance of factual findings, which differ greatly from case to case. The unreasonable risk of

harm analysis entails myriad considerations and cannot be applied mechanically. <u>Williams v.</u>

<u>Leonard Chabert Medical Center</u>, 744 So.2d 206 (La. App. 1st Cir. 1999). The courts use a duty-

risk analysis or try to balance the likelihood and magnitude of the harm against the utility of the

thing. Economic considerations include the cost of risk avoidance to the defendant and the

utility of plaintiff's conduct. <u>Summerville v. Louisiana Nursery Outlet, Inc.</u>, 676 So.2d 238, 240

(La. App. 1st Cir.), <u>writ</u> <u>denied</u>, 681 So.2d 1263 (La. 1996); <u>See also</u> <u>Brown v. United States</u>,

861 F. Supp. 539, 542 (W.D. La. 1994).

### B.    No Duty Was Breached Because the Slope Did Not Present an Unreasonable Risk of Harm

Plaintiff would have this court conclude that the brightly painted slope with bold letters

indicating "CAUTION" was unreasonably dangerous. But the mere fact of injury does not

elevate the condition to that of an "unreasonably dangerous" defect. <u>Shipp v. City of Alexandria</u>,

395 So.2d 727, 729 (La.1981). In order to qualify as a defect, a defect or imperfection must

constitute a dangerous condition or pose an unreasonable risk of injury to a prudent person who

exercises ordinary care under the circumstances. In this instance, the photographs clearly

illustrate that the slope was plainly visible and not unreasonably dangerous. And, Mrs. Martinez

was familiar with the existence of the slope, but was admittedly not looking where she was

walking.[28]

---

[28] Gov't Ex. "G", Martinez, pp. 7-8, 12, 16.

In Brown, supra, plaintiff tripped on an exposed tree root on his way to the Post Office. The "the root was in plain sight and, with the exercise of reasonable caution could have been avoided with little effort." The court held that although the exposed tree root was a potentially dangerous condition, no legal duty could be imposed because "the condition was obvious, easily avoidable, universally known, and, in fact, known to the invitee at the time of the accident." Id., at 542. See also Bennett v. Chevron Stations, Inc., supra, 2000 WL 782070, at *2, citing Barnes v. New Hampshire Ins. Co., 573 So.2d 628 (La. App. 2d Cir. 1991)(two to three inch drop from driveway to ground did not pose an unreasonable risk of harm); Melancon v. J.B. Thibodeaux, Inc., 557 So.2d 256 (La. App. 3rd Cir. 1989)(three and a half inch step did not pose an unreasonable risk); Savic v. Assurance Co. of Am., 509 So.2d 460 (La. App. 3d Cir. 1987)(doorsill did not pose an unreasonable risk of harm).

In the instant case, according to plaintiff's testimony, she was familiar with the NEX and the slope prior to December 21, 1996.[29] That day, she walked directly over the slope on her way to the Toyland area, and noticed it. She then came back over the slope and fell.[30] It was plainly visible as seen in the numerous attached photographs. There was no "hidden danger" in the nature of a trap as alleged in the Complaint. The actions of the Navy in painting the slope bright yellow, providing a warning, and contrasting colors to the gray floor at the time of renovations were reasonable.[31] Thousands of patrons have traversed the slope, and there have been no

---

[29] Gov't Ex. "G", Martinez, p. 16.

[30] Gov't Ex. "G", Martinez, p. 9.

[31] Gov't Ex. "A", Marshall, para. 7; Gov't Ex. "B", Chaisson, para. 4.

17

complaints or similar incidents.[32]

In addition, uneven walkways are such an ordinary and universally known part of our natural surroundings and existence, everyone should know to walk over them with care. To impose a legal duty on the U.S. Government to "flatten" or make level every walkway, would impose too severe a burden and expense.

### C.   No Duty Was Breached Because NEX Employees Had No Prior Knowledge of an Unreasonably Dangerous Condition

In order to prevail, plaintiff must also show that NEX employees had prior knowledge of an unreasonably dangerous condition. Prior knowledge then gives rise to a duty to remedy the condition. See Carr v. Wal-Mart Stores, Inc., 772 So.2d 865, 866 (La. App. 5th Cir. 2000).

The undisputed facts show that the employees had no prior knowledge of a problem with the slope in the NEX.[33] Plaintiff, her sister, and several NEX employees verified that there was no foreign substance, liquid, or debris on the slope.[34]

Over the past fifteen years since the renovation, no one including Mrs. Martinez, has ever complained of a problem with the slope. And, literally thousands of patrons have traversed the slope without incident.[35]

---

[32] Gov't Ex. "A", Marshall, paras. 9-11; Gov't Ex. "B", Spurlock, paras. 4-6; Gov't Ex. "C", Chaisson, para. 5; Gov't Ex. "D", Camel, paras. 6-8; Gov't Ex. "E", Shulz, paras. 11-13.

[33] Gov't Ex. "A", Marshall, paras. 9-11; Gov't Ex. "B", Spurlock, paras. 4-6; Gov't Ex. "C", Chaisson, para. 5; Gov't Ex. "D", Camel, paras. 6-8; Gov't Ex. "E", Shulz, paras. 11-13.

[34] Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, p. 4; Rec. Doc. 1, Complaint, paras. IV-V, VII; Gov't Ex. "G", Martinez, pp. 12-13; Gov't Ex. "A", Marshall, para. 9; Gov't Ex. "D", Camel, para. 6; Gov't Ex. "E", Shulz, para. 12.

[35] Gov't Ex. "A", Marshall, paras. 9-11; Gov't Ex. "B", Spurlock, paras. 4-6; Gov't Ex. "C", Chaisson, para. 5; Gov't Ex. "D", Camel, paras. 6-8; Gov't Ex. "E", Shulz, paras. 11-13.

In <u>Carr</u>, <u>supra</u>, plaintiff slipped on a wet oily substance on top of a directional arrow painted on the parking lot surface. Because plaintiff failed to prove "prior knowledge" by defendant, an essential element of either a strict liability or negligence action, the Louisiana appellate court affirmed the trial court's granting of summary judgment in defendant's favor. 772 So.2d 865, at 868. In this instance, it is undisputed that NEX employees had no prior knowledge of an unsafe condition, and accordingly no opportunity to remedy. Plaintiff cannot prove this essential element of her negligence action.

## CONCLUSION

The basis for the Complaint is premises liability. Plaintiff has failed to plead a cognizable claim under the FTCA, and the United States' sovereign immunity is preserved. Also, several essential elements of plaintiff's negligence action cannot be established, and therefore summary judgment is appropriate as a matter of law.

Respectfully submitted,

JIM LETTEN
UNITED STATES ATTORNEY

FRED T. HINRICHS (#17300)
Assistant United States Attorney
Hale Boggs Federal Building
501 Magazine Street, Second Floor
New Orleans, Louisiana 70130
Telephone: (504) 680-3129

19

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been served upon counsel for all parties by

mailing the same to each, properly addressed and postage prepaid this 1st day of August, 2001.

_____
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOYCE MARTINEZ, ET AL. | * | CIVIL ACTION |
| v. | * | NO. 00-0017 |
| UNITED STATES OF AMERICA | * | SECTION "F" (1) |

\*      \*      \*      \*      \*

## STATEMENT OF UNCONTESTED MATERIAL FACTS

The United States of America sets forth the following uncontested material facts in support of its Motion for Summary Judgment:

1.      Plaintiff, Joyce Martinez filed this civil action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., following a slip and fall at the Navy Exchange ("NEX"), located at the Naval Support Activity in Algiers, Louisiana.  Her fall occurred on Saturday, December 21, 1996. (Rec. Doc. 1, Complaint).

2.      Approximately fifteen years ago, the NEX underwent renovation to increase its size by opening a common wall between adjacent buildings and creating a passage.  (Gov't Ex. "A", Marshall Declaration (hereafter "Marshall"), para. 5, with attached layout of the facility).

3.      A two inch differential in floor elevations necessitated construction of a concrete threshold or slope between buildings.  The newer "Toyland" area is slightly higher in elevation.

(Gov't Ex. "A", Marshall, para. 4; Gov't Ex. "B", Chaisson Declaration (hereafter "Chaisson"), para. 2; Gov't Ex. "C", Spurlock Declaration (hereafter "Spurlock"), para. 3; Gov't Ex. "D", Camel Declaration (hereafter "Camel"), para. 5).

4.    At the time of the renovation, the slope was painted bright yellow with a warning, "CAUTION", centered in red letters. The surrounding floor was painted gray and contrasts sharply with the painted slope. (Gov't Ex. "A", Marshall, para. 7; Gov't Ex. "B", Chaisson, para. 4).

5.    Attached to numerous Declarations are photographs depicting the longstanding appearance of the slope <u>as it existed at the time of Mrs. Martinez's fall</u> on December 21, 1996. (Gov't Ex. "A", Marshall, paras. 6-7; Gov' Ex. "B", Chaisson, paras. 3-4; Gov't Ex. "C", Spurlock, para. 2; Gov't Ex. "D", Camel, para. 4; Gov't Ex. "E", Schulz Declaration (hereafter "Schulz"), paras. 6-7, 14).

6.    One month post-accident on January 22, 1997, Mrs. Martinez provided a recorded statement wherein she stated that she could not remember whether the floor was painted, and did not know the color. (Gov't Ex. "F", Willis Declaration (hereafter "Willis"), paras. 2-3, with Martinez's statement, pp. 3-4).

7.    There is not a scintilla of evidence to support her allegation that the slope was not painted at the time of her fall.

8.    Mrs. Martinez described herself as a "frequent" shopper at the NEX for years prior to December 21, 1996, although she has denied shopping frequently in Toyland. (Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, p. 6; Gov't Ex. "G", Martinez deposition (hereafter "Martinez"), pp. 6-7).

2

9.     Several NEX employees knew Mrs. Martinez by sight.  (Gov't Ex. "A", Marshall, para. 8; Gov't Ex. "C", Spurlock, para. 8; Gov't Ex. "D", Camel, para. 10; Gov't Ex. "E", Shulz, para. 10).

10.     As a frequent shopper, she was familiar with the slope. (Gov't Ex. "G", Martinez, p. 16).

11.     In addition to being familiar with the slope, Mrs. Martinez first traversed the slope on December 21, 1996 (without incident) in order to shop in Toyland, <u>and noticed the slope at that time</u>. (Gov't Ex. "G", Martinez, p. 9).

12.     Her fall occurred upon her return to the furniture and appliance area. (Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, p. 3; Gov't Ex. "D", Camel, para. 3; Govt Ex. "E", Shulz, para. 9).

13.     Mrs. Martinez has consistently maintained that no foreign substance or debris caused her fall (Gov't Ex. "F", Willis, paras. 2-3, with Martinez's statement, p. 4; Rec. Doc. 1, Complaint, paras. IV-V, VII; Gov't Ex. "G", Martinez, pp. 12-13).

14.     NEX employees have attested that the floor was clean, dry, and free of any substance or debris. (Gov't Ex. "A", Marshall, para. 9; Gov't Ex. "D", Camel, para. 6; Gov't Ex. "E", Shulz, para. 12).

15.     Lighting in the area was good. (Gov't Ex. "F ", Willis, paras. 2-3, with Martinez's statement, p. 6, and Washington's statement, p. 3; Gov't Ex. "C", Spurlock,  para. 7;  Gov't Ex. "D", Camel, para. 9; Gov't Ex. "E", Shulz, para. 8).

16.     No NEX employee was aware of any potential problem with the slope, that over the past fifteen years there had never been a slip or fall on the slope, and that no customer,

3

including Ms. Martinez, has ever complained about the condition of the slope or the manner in which it has been maintained. (Gov't Ex. "A", Marshall, paras. 9-11; Gov't Ex. "B", Spurlock, paras. 4-6; Gov't Ex. "C", Chaisson, para. 5; Gov't Ex. "D", Camel, paras. 6-8; Gov't Ex. "E", Shulz, paras. 11-13).

17.    Mrs. Martinez's complaint is <u>actually with the floor itself</u>. (Gov't Ex. "G", Martinez, pp. 12-13); (Gov't Ex. "H", United States' Interrogatory No. IX, and her answer).

18.    She testified that the slope or change in elevation caused her to fall and in her opinion, it should have been flat. (Gov't Ex. "F", Willis, with Martinez's statement, p. 6).

19.    Mrs. Martinez admits to not looking where she was walking. She was "looking forward" at her sister and did not have her mind on the slope. (Gov't Ex. "G", Martinez, pp. 7-8, 12, 16).

20.    She was talking with her sister at the time of her fall. (Gov't Ex. "F", Willis, with Martinez's statement, p. 5).

21.    Her sister, Jacqueline Washington, explained that she just didn't realize that she had to step down. (Gov't Ex. "F", Willis declaration, with Washington's statement, p. 3).

22.    Mrs. Martinez was wearing boots with a 1½ inch heel and . . . "just slipped." (Gov't Ex. "F", Willis, with Martinez's statement, p. 5).

23.    Following the denial of her administrative claim on July 8, 1999, her Complaint was filed on January 4, 2000. (Gov't Ex. "I", July 8, 1999 letter of M. J. Suszan, denying her administrative claim).

24.    Despite her use of the term "negligence" in the Complaint, it is clear that the basis for this action is an alleged premises defect, not cognizable under the FTCA. This action clearly

4

does not concern the negligence of any specific federal employee for acts or omissions committed within the scope of his or her duties. (Gov't Ex. "G", Martinez, pp. 12-13); (Gov't Ex. "H", United States' Interrogatory No. IX, and her answer).

      25.    The Navy denied her claim on July 8, 1999, as being based in premises or strict liability, rather than on the negligence of any federal employee within the scope of his or her duties with the government. (Gov't Ex. "I", July 8, 1999 letter of M. J. Suszan, denying her administrative claim).

      26.    The Complaint lacks any allegations against any specific employee of the government for committing any specific act or omission within the scope of his or her duties with the Government.

          Respectfully submitted,

          JIM LETTEN
          UNITED STATES ATTORNEY

          FRED T. HINRICHS (#17300)
          Assistant United States Attorney
          Hale Boggs Federal Building
          501 Magazine Street, 2nd Floor
          New Orleans, Louisiana 70130
          Telephone: (504) 680-3129

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon counsel for all parties by mailing the same to each, properly addressed and postage prepaid this 1st day of August, 2001.

_____
Assistant U.S. Attorney

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOYCE MARTINEZ, ET AL.   *   CIVIL ACTION

    v.       *   NO.  00-0017

UNITED STATES OF AMERICA  *   SECTION  "F" (1)

      *  *  *  *  *

## NOTICE OF MOTION

To: Mr. Frank M. Buck, Jr.
  1100 Poydras Street
  Energy Centre, 2610
  New Orleans, Louisiana 70163

  PLEASE TAKE NOTICE that the defendant, United States of America, will bring on its

Motion to Dismiss, or for Summary Judgment for hearing before the Honorable Martin L. C.

Feldman, District Judge, United States District Court, 500 Camp Street, New Orleans, Louisiana,

on the 22nd day of August, 2001 at 10:00 a.m., or as soon thereafter as counsel may be heard.

New Orleans, Louisiana, this 1st day of August, 2001.

JIM LETTEN
UNITED STATES ATTORNEY

FRED T. HINRICHS (#17300)
Assistant United States Attorney
Hale Boggs Federal Building
501 Magazine Street, Second Floor
New Orleans, Louisiana 70130
Telephone: (504) 680-3129

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon counsel for all parties by

mailing the same to each, properly addressed and postage prepaid this 1st day of August,

2001.

Assistant U.S. Attorney

2

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**