UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOYCE MARTINEZ, WIFE OF/AND LOUIS MARTINEZ | * | CIVIL ACTION |
| | * | NO. 00-0017 |
| VERSUS | | |
| THE UNITED STATES OF AMERICA, ON BEHALF OF THE U. S. DEPARTMENT OF THE DEFENSE/DEPARTMENT OF THE NAVY/NAVY EXCHANGE SERVICE COMMAND | * | SECTION "F" |
| | * | MAGISTRATE 1 |
| | * | |

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS, ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Defendant has filed the instant Motion to Dismiss, Alternatively, Motion for Summary Judgment, regarding a slip and fall by plaintiff, Joyce Martinez, at the Naval Exchange on the Westbank. Defendant first attempts to restructure the allegations against it and style it as a case of "premises liability". It argues that under such a scenario its Motion to Dismiss should be granted. Second, it argues in the alternative that if the Court finds that this is a negligence action, which plaintiff submits is set forth in numerous specifications in the complaint, then it argues there are no genuine issues of material fact and its Motion for Summary Judgment should be granted.



## MOTION TO DISMISS – "PREMISES LIABILITY"

Plaintiff first submits that the complaint clearly sets forth that the defendant is being sued for the negligence of its employees and such is set forth with specificity in paragraph VI of the complaint as follows:

> "The fall was caused by the fault and/or negligence of the United States of America, on behalf of and/or U. S. Department of Defense and/or U. S. Department of Navy and/or Naval Service Exchange Command, ***and is responsible for the negligence of those persons operating the Naval Exchange in the negligent and faulty manner.***"

In paragraph V of the complaint, the defendant is alleged to be negligent and at fault in causing the fall and injuries of plaintiff as follows:

> "a.  Failing to adequately mark and place warnings in the area of an uneven level of the floor in a manner that would have alerted a reasonable shopper to become aware of a change in level of the floor and which unevenness was capable of causing falls;
>
> b.  Failing to paint and otherwise mark or put signage on the floor area well enough in advance in the change of level in the floors in the Naval Exchange in a manner that would have alerted the reasonable shopper whose attention might have been distracted such that a reasonable shopper, even though shopping and whose attention was distracted, would have become aware of an eminent change in level of the floor;"

Further, the defendant was alleged to be liable to the plaintiff for "...its failure to adequately supervise its employees in the manner of placing warnings and signs on the floor area of the Naval Exchange where there is a change of level in the floors which could cause shoppers to fall." Paragraph VII.

Thus, the allegations by plaintiff relate to liability of the defendant for its employees failing to put adequate signs and marks in the area that would have alerted Joyce Martinez that

she was encountering, at that moment that she was walking, an uneven level of the floor and to watch her step.

Defendant has attempted to couch the plaintiff's case under sets and rules of law which would support a Motion to Dismiss. Plaintiff has not alleged strict liability of the defendant. Plaintiff has not alleged that this was simply caused by a defect in the premises for which defendant is simply liable. Instead, plaintiff has alleged that there was an uneven level of the floor for which defendant failed to properly mark the floor to put one on notice to be careful. Accordingly, defendant's Motion to Dismiss should be denied.

## SUMMARY JUDGMENT

Defendant has attached several unsworn declarations, photographs and unsworn statements in support of its Motion for Summary Judgment.[1] Plaintiff attaches herein that portion of her deposition that creates a genuine issue of material fact which should defeat summary judgment in this matter. (Exhibit "A", pp. 13-15) Specifically, the genuine issue of material fact is whether there was a sufficient warning over the uneven level of floor which could have prevented plaintiff's accident. In its Memorandum in Support of its summary judgment, the numerous statements of the employees of defendant clearly establish that defendant was aware, through its employees, that there was a slanted slope between the two sections of the store. The question becomes whether the defendant, through its employees, took adequate steps to place signs, markers and other type warnings which would have prevented plaintiff's fall on the date and time of her accident.

---

[1] Plaintiff objects to the Court considering all matters that are hearsay and not based on personal knowledge that are set forth in all declarations and the attachments thereto.

In <u>Sistler v. Liberty Mutual Insurance Company</u>, 558 So. 2d 1106 (La. 1990), the Court found that a one-inch change in elevation did present an unreasonable risk of harm when the area at the elevation and above or below had the same quarry tile. There was a lack of warning of the elevation change and a lack of highlighting.[2]

In the instant case, plaintiff alleges and testified under oath that the sloped area was not painted as identified in the photographs defendant has attached in support of its summary judgment. Therein lies the genuine issue of material fact.

Defendant asserts that the area at the time of plaintiff's accident was painted yellow with the "CAUTION" in red letters centered on the slope. Plaintiff denies this. Therein lies the genuine issue of material fact.

Assuming the defendant's statements to be correct that the slope was painted with yellow paint and red letters, defendant obviously agrees that is not sufficient to "excite one's attention" to the slope. Specifically, defendant hung a sign very close to head/eye level after the accident. (See Government Exhibit "A", paragraph 12.) Plaintiff admits that it was the change in elevation which caused her to fall. Assuming the Court takes into account the statement of plaintiff's sister, plaintiff's sister even states that plaintiff apparently did not realize she was encountering the change in elevation. Why is that? It did not have contrasting paint (a highlighting as discussed in <u>Sistler, supra</u>) and there was a lack of a sign at eye level.

---

[2] Under Louisiana law, the plaintiff asserting negligence liability has the same burden under strict liability but has the additional burden of proving defendant knew or should have known of the defect. In this instance, all declarants admit they all knew of the sloped area prior to plaintiff's accident and the only question becomes whether the actions in light of that knowledge were reasonable under the circumstances.

Merchants are constantly held liable for foreign substances on the floor not seen by shoppers because shoppers are not expected to look down on the floor and ahead of them. Plaintiff admits she was not looking down at the floor. If defendant contends plaintiff should have been looking down at the floor, defendant knew that the slope was there and had the duty to sufficiently highlight and mark the area.

At the time of this incident, plaintiff testified in her deposition that it had been quite some time before she had been in the store. Specifically, she testified as follows:

> "I had been in the building before, but it's been quite some time. Because like I said, I don't go in there frequently." (Exhibit "B", plaintiff's deposition, pp. 6-7)

This is a simple negligence case. Plaintiff alleges in her complaint that the uneven area of the floor caused her to fall. Plaintiff alleges that defendant was aware of the uneven slope and failed to adequately mark and sign the area in a way that would have alerted her to encountering the slope at that moment. Defendant admits that through its employees it was aware of the slope. It contends that it had adequately signed and marked the area. That is the contested factual dispute. Accordingly, as there exists genuine issue of material fact, defendant's Motion should be denied.

It is interesting to note that defendant cites a case and attaches it in support of its memorandum that supports the plaintiff's position herein. See <u>Bennett v. Chevron Stations, Inc.</u>, 2000 WL 782070 (ED La.)

## ADDITIONAL DISCOVERY

Plaintiff's counsel had been under the assumption that he propounded discovery to counsel for defendant following the last status conference of this matter. As set forth in the memoranda in support of plaintiff's Motion to Continue the hearing on the summary judgment and the Motion to Continue Trial, that was an error that counsel for plaintiff immediately corrected upon learning that discovery had not been sent.

Defendant's discovery responses were received by plaintiff subsequent to the filing of the Motion to Continue the hearing on the summary judgment and the Motion to Continue the trial of this matter. Upon receipt of that discovery, plaintiff immediately requested the taking of various declarants whose declarations were used by defendant in support of its summary judgment. (Exhibit "C" and "D") One of the statements made repetitively was that there have been no other complaints such as that made by Joyce Martinez. That is an important area to probe in the depositions because plaintiff believes she is aware of another person who lives in the community who sustained the exact type of fall that she did at the very spot where she fell. Plaintiff believes that the discovery depositions may bear out that the subsequent changes by defendant were not only in response to plaintiff's fall but another one that had occurred in a short period of time before plaintiff's deposition.

When counsel for plaintiff learned that the written discovery requests had not been propounded to defendant, the discovery requests were immediately propounded. After the requests were propounded, the defendant then filed the instant Motion for Summary Judgment which clearly will not allow plaintiff the opportunity to take the depositions prior to the hearing.

Based on the foregoing, plaintiff prays that the Motion for Summary Judgment be denied.

RESPECTFULLY SUBMITTED:

_____
FRANK M. BUCK, JR. - Bar No. 16836
ROBERT L. MANARD - Bar No. 9076
Energy Centre, Suite 2610
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 585-7777

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record by placing same in the United States Mail, postage prepaid, this _____ day of _____, 2001.

_____

1   A.   I slipped.
2   Q.   Okay. And you slipped on what?
3   A.   The floor, the slant. I just went down on the
4   slant, you know, on that slant in the floor, the decline
5   in the floor. I slipped there.
6   Q.   Do you believe it's because of the change in
7   the elevation from the one floor to the other --
8   A.   Yes, I do.
9   Q.   -- that caused you to fall?
10  A.   Yes, I do.
11  Q.   Do you know if that slope is painted in any
12  contrasting color from the above floor or the lower
13  floor?
14  A.   To my knowledge the floor was not painted. It
15  needed painting, but it was not painted then.
16  Q.   I'm talking strictly about the slope now.
17  A.   No, it was not painted. There was nothing
18  there. To my knowledge I saw nothing.
19  Q.   Do you recall what the floor looked like in the
20  -- and I'm going to call the upper section the rear of
21  the store.
22  A.   Okay.
23  Q.   And the forward section, the lower section of
24  the floor.
25  A.   Okay.

MET[...]ORTERS

EXHIBIT
A

1   Q.   Is that fair?
2   A.   Okay.
3   Q.   And then there's a slope in between the two?
4   A.   Correct.
5   Q.   Okay. Just so for argument sake so we know
6   what we're talking about. The upper section or the
7   higher section or the rear section of the store, what
8   color is that floor?
9   A.   I really don't know.
10  Q.   Okay. Do you know what color the front of the
11  store floor is?
12  A.   I never paid attention to that. If I did, I
13  don't remember now because it's been quite sometime
14  ago. But I can tell you one thing. It was not painted.
15  Q.   It was not?
16  A.   Because now they have painted everything over
17  there.
18  Q.   Okay.
19  A.   But it was not painted at that time. I could
20  tell you that much.
21  Q.   Do you recall what color it was then?
22  A.   I don't recall the color, but it was not as
23  pretty as it is now. I grant you that.
24  Q.   Do you recall, do you know when they painted
25  it?

1    A.   A couple of weeks after I had the fall.  They
2  put signs up and everything.  Because I went back and
3  had pictures taken.  And everything was done in order
4  after I had the fall.
5    Q.   At the time of the fall, did you look at the
6  floor to see what it looked like?
7    A.   I can't remember.  I can't remember the color.
8    Q.   But are you sure that several weeks after it
9  was a different color than it was --
10   A.   Of course.  I tell you, it was drab.  It was
11 dry looking, dead looking.  Okay?  I would say dingy.  I
12 can tell you that.  It wasn't as colorful as it is now.
13 Because when we went back to take pictures, and
14 everything was beautified.
15   Q.   Beautified.  What has been painted since?  What
16 do you believe?
17   A.   The whole area was painted.  Signs was put up
18 and everything.
19   Q.   What kind of signs?
20   A.   Caution sign.  I'm not, I'm not going to say
21 caution sign, but I think.  I'm not clear.  But there
22 are signs I'm sure telling you to be careful as you go
23 through that area.  But I can't recall exactly what's up
24 there.
25   Q.   But you believe it's to alert you to the slope?

```
 1  date?
 2      A.   No.
 3      Q.   This is your first time at the Toy Center; is
 4  that correct?
 5      A.   Yes.  You know, it had been quite some time
 6  ago, you know.  I don't frequently go in the Toy Center.
 7  I mostly shop at the Exchange.
 8      Q.   Okay.  How often would you say that you shopped
 9  at the Exchange back in December of '96?
10      A.   Frequently I shop at the Exchange, but not the
11  Toy Center.
12      Q.   Frequently, once a week, twice a week?
13      A.   Yeah.
14      Q.   Okay.  The Toy Center strictly has toys?  Does
15  it?
16      A.   Yes.  And maybe appliances.  Appliances too.
17      Q.   Okay.  So let me understand.  Had you been to
18  the Toy Center prior to this date?
19      A.   Sometime ago, but, you know, not -- I can't --
20  I don't -- like I said, it's not a place that I go in
21  frequently.
22      Q.   I see.  I'm just trying to get an idea of
23  whether you'd ever been in that building before.
24      A.   I had been in the building before, but it's
25  been quite some time.  Because like I said, I don't go
```

1   in there frequently.
2       Q.   I understand. Why don't you tell me in your
3   own words what happened to cause your fall?
4       A.   I was in the back of the Exchange. Well, in
5   the Toy Center. I was in the back of the Toy Center,
6   and I was coming forward. I looked around. I did not
7   get what I wanted. And I was looking up. And as I was
8   walking forward, there was a slight decline in the floor
9   and I slipped. I was trying to catch myself. There was
10  book cases on the side of me, and I was trying to catch
11  myself to break the fall.
12      Q.   I see. When you say you were walking forward,
13  were you walking towards the front of the store?
14      A.   Walking toward the front of the store.
15      Q.   From the rear of the store?
16      A.   Yes.
17      Q.   And you said there was a slight decline, I
18  believe is what you said. Are there two separate areas
19  in this Toy Center?
20      A.   Yes.
21      Q.   Perhaps divided by this slight decline?
22      A.   Yes.
23      Q.   Okay. You said as you were walking toward the
24  front of the store, you were looking where?
25      A.   Up.

# MANARD & BUCK

ATTORNEYS AND COUNSELORS AT LAW
ENERGY CENTRE, SUITE 2610
1100 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70163-2610

FRANK M. BUCK, JR.

FAX (504) 585-7715
TELEPHONE (504) 585-7777

August 14, 2001

**BY TELECOPIER ONLY**

Mr. Fred T. Hinrichs
Assistant United States Attorney
501 Magazine Street
Second Floor
New Orleans, Louisiana 70130

Re:   Joyce Martinez, et al v.
      United States of America
      No. 00-0017, Section "F" (1)
      Our File No. 97-042

Dear Fred:

I would like to take the depositions of Mr. Marshall, Ms. Spurlock, Mr. Chaisson, Ms. Camel and Ms. Shultz. Considering the statements made in the Statement of Uncontested Material Facts by defendant in No. 16 which we believe can be impeached by another person who we know claims to have had an accident at the very same site prior to the plaintiff's accident. Please advise of their availability of deposition in the very near future so that we are not taking these depositions on the eve of trial.

Sincerely,

Frank M. Buck, Jr.

FMB,jr:gmh



EXHIBIT C

# MANARD & BUCK
ATTORNEYS AND COUNSELORS AT LAW
ENERGY CENTRE, SUITE 2610
1100 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70163-2610

FRANK M. BUCK, JR

FAX (504) 585-7715
TELEPHONE (504) 585-7777

**August 14, 2001**

**BY TELECOPIER ONLY**

Mr. Fred T. Hinrichs
Assistant United States Attorney
501 Magazine Street
Second Floor
New Orleans, Louisiana 70130

Re:  Joyce Martinez, et al v.
     United States of America
     No. 00-0017, Section "F" (1)
     Our File No. 97-042

Dear Fred:

I would like to obtain the actual recordings of Ms. Martinez and Ms. Washington identified in the documents defendant has submitted in support of its summary judgment.

Sincerely,

Frank M. Buck, Jr.

FMB,jr:gmh



EXHIBIT D

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOYCE MARTINEZ, WIFE OF/AND LOUIS MARTINEZ | * | CIVIL ACTION |
| | * | NO. 00-0017 |
| VERSUS | | |
| THE UNITED STATES OF AMERICA, | * | SECTION "F" |
| ON BEHALF OF THE U. S. DEPARTMENT OF THE DEFENSE/DEPARTMENT OF | * | MAGISTRATE 1 |
| THE NAVY/NAVY EXCHANGE SERVICE COMMAND | * | |

## RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTESTED MATERIAL FACTS

Plaintiff responds to the Statement of Uncontested Material Facts submitted by defendant as follows:

1. Admitted.

2. Admitted.

3. Admitted.

4. It is denied that at the time of the plaintiff's accident that the slope was painted bright yellow with a warning "CAUTION", centered in red letters. (Deposition testimony of plaintiff, Joyce Martinez, Exhibit "A", pp. 13-15).

5. Denied. See Response No. 4.

6.   Plaintiff has not yet had an opportunity to obtain a copy of the recording of the statement identified in No. 6 and moreover is hearsay to which plaintiff objects. Moreover, the issue is not what color the floor was painted, rather, whether the slope was painted the same color which is set forth in Response No. 4 above.

7.   Denied. See Response No. 4.

8.   Plaintiff admits that she had shopped at the NEX for some years prior to December 21, 1996, but maintains that she did not shop frequently in Toyland and it had been quite some time since being the store.

9.   Plaintiff can neither admit nor deny No. 9 and has not yet had the opportunity to depose said declarants.

10.  Plaintiff's deposition testimony speaks for itself.

11.  In response to whet she noticed the slope at that time, plaintiff responded as follows:

"Well, I'll say yes."  (See Government Exhibit "G", Martinez, p. 9.)

12.  It is admitted that plaintiff's fall occurred while traversing <u>down</u> the slope.

13.  Admitted.

14.  Admitted.

15.  Admitted.

16.  Plaintiff can neither admit nor deny No. 16 as plaintiff has not had the opportunity to depose the declarants.  Plaintiff believes that the depositions of these individuals will bear out that there has been another accident and claim in the same area where plaintiff sustained her fall.

17. Denied. Plaintiff's complaint is with the lack of warnings. See paragraphs V and VI of plaintiff's complaint. That is negligence.

18. It is admitted that the slope caused plaintiff to fall but it was a lack of warning that failed to direct her attention to notice the slope as she was traversing *DOWN* the slope. She had no difficulty traversing up the slope when going into Toyland. While going up, she lifted her foot. While going down and stepping on the first angle down, a loss of balance can occur.

19. Admitted.

20. Denied. Plaintiff was walking towards her sister and her deposition did not bear that out that she was "talking" with her sister at the time.

21. Admitted. Plaintiff has not yet been provided with the actual recording identified in No. 21 and a request for same has been made.

22. It is admitted that plaintiff claims she was wearing boots with about a one-inch heel. It is denied that she "just slipped". She slipped because of the slant in the floor and the lack of warnings to alert her that she was encountering the slant. (See Exhibit "A")

23. Admitted.

24. Denied. The complaint speaks for itself.

25. Denied. Government Exhibit "I" clearly shows that the Government denied her claim because it contends that the "change in elevation was clearly marked and that your client's injuries were not the result of the negligence of Government employees. Accordingly, your claim is denied."

26. Denied. See paragraphs of V and VI of the original complaint.

RESPECTFULLY SUBMITTED:

_____
FRANK M. BUCK, JR. - Bar No. 16836
ROBERT L. MANARD - Bar No. 9076
Energy Centre, Suite 2610
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 585-7777


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record by placing same in the United States Mail, postage prepaid, this 14th day of August, 2001.

_____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOYCE MARTINEZ, WIFE OF/AND LOUIS MARTINEZ | * | CIVIL ACTION |
| | * | NO. 00-0017 |
| VERSUS | | |
| THE UNITED STATES OF AMERICA, | * | SECTION "F' |
| ON BEHALF OF THE U. S. DEPARTMENT OF THE DEFENSE/DEPARTMENT OF | * | MAGISTRATE 1 |
| THE NAVY/NAVY EXCHANGE SERVICE COMMAND | * | |

## STATEMENT OF CONTESTED MATERIAL FACTS

Joyce Martinez, plaintiff herein, sets forth the following Contested Material Facts in opposition to defendant's Motion for Summary Judgment.

1. The defendant knew of a slanted slope in between two areas of the store where plaintiff caused her to fall. See Government Exhibits "A", "B", "C", "D" and "E".

2. After plaintiff's fall, defendant added an overhead yellow caution sign See Government Exhibit "A", paragraph 12.

3. Whether the slanted/sloped area at the time of plaintiff's accident was painted with any contrasting paint. (Compare Government Exhibits/Unsworn Declarations to plaintiff's deposition and Exhibit "A" herein, pp. 13-15).

RESPECTFULLY SUBMITTED:

_____
FRANK M. BUCK, JR. - Bar No. 16836
ROBERT L. MANARD - Bar No. 9076
1100 Poydras Street, Suite 2610
New Orleans, Louisiana 70163
Telephone: (504) 585-7777

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded to all counsel of record by placing same in the United States Mail, postage prepaid, this 14r day of August, 2001.

_____